1      **Theft   or   embezzlement   from   employee   benefit   plan.**
2      Any person who embezzles, steals, or unlawfully and willfully abstracts
3      or converts to his own use or to the use of another, any of the moneys,
4      funds, securities, premiums, credits, property, or other assets of any
5      employee welfare benefit plan or employee pension benefit plan, or of
6      any fund connected therewith, shall be fined under this title, or
7      imprisoned not more than five years, or both.

8      430.   Each of the WellPoint healthcare plans which is an "employee welfare
9  benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1)(A), and otherwise is
10 subject to "any provision" of Section 3 of ERISA is included in this Count.

11     431.   Each of the WellPoint healthcare plans that are subject to ERISA or are
12 a non-ERISA plan funded by insurance coverage WellPoint provides or administers,
13 are subject to Section 664 of Title 18.  The applicable plan documents expressly state
14 that all benefits due under the plan terms will be paid and that the underlying benefits
15 they expressly guarantee are plan assets.

16     432.   The governing plan documents warrant that all benefits due under the
17 plans will be paid.  By improperly reducing payments on out-of-network claims,
18 WellPoint intentionally caused Plaintiffs and the members of the ERISA Subscriber
19 and Provider Subclasses to be underpaid guaranteed benefits to which they were
20 otherwise entitled in accordance with the terms of their group health plans.

21     433.   For fully insured healthcare plans, in which WellPoint both administered
22 the plans and paid the benefits from their own assets, Defendants benefited from the
23 conversion of assets from their ERISA plans.  Whereas these assets should have been
24 held by WellPoint in its fiduciary capacities under ERISA and non-ERISA plans and
25 paid to its members, WellPoint improperly withheld such funds and maintained them
26 as part of its own assets for its own benefit. For self-funded healthcare plans,
27 WellPoint made final appeal decisions and intentionally caused underpayment of
28

1  benefits to Plaintiffs and the ERISA Subscriber and Provider Subclasses in order to
2  justify receipt of administrative fees.

3      434.   The pattern of racketeering activity described above was undertaken by
4  and through the Enterprise described above.  The use of the Enterprise was necessary
5  for the underpayment scheme and these predicate acts to be successfully undertaken.
6  Defendants controlled and directed the affairs of the Enterprise as described above.

7      435.   Defendants acted with specific intent to deprive Plaintiffs and ERISA
8  Subscriber and Provider Subclasses of guaranteed benefits, and were sufficiently
9  aware of the facts to know that they were acting unlawfully and contrary to the trust
10 placed in them and the plan sponsors whose plans they were administering.

11     436.   Each false payment on a claim constitutes a separate and distinct
12 predicate act, in violation of 18 U.S.C. § 664, of converting or misappropriating funds
13 specifically earmarked within the applicable plan as a guaranteed benefit for the
14 intended member, for WellPoint's direct or indirect benefit.   These intentional
15 underpayments numbered in the millions and continuous through the various class
16 periods continuing to the present.

17     437.   As set forth in this Complaint, Defendants concocted multiple and multi-
18 faceted underpayment schemes, including use of the Ingenix Database, to make
19 improperly reduced payments for ONS.

20     438.   As named fiduciaries and claims administrators of the WellPoint
21 healthcare plans, WellPoint occupied and occupies a position of trust and it had, and
22 has, a special relationship with Plaintiffs and the ERISA Subscribers and Provider
23 Subclasses.

24     439.   The above-described acts of conversion of employee benefit plan funds,
25 and mail and wire fraud, are related because they each involved common participants,
26 common methodologies, common results impacting upon common victims and a
27 common purpose of executing the under payment scheme, and are continuous because
28 they occurred over a significant period of years, and constitute the usual practice of

147

1   WellPoint such that they amount to and pose a threat of continued racketeering
2   activity.

3       440.    The purpose of WellPoint's scheme was to underpay the guaranteed
4   benefits to the Subscriber Plaintiffs and the ERISA Subscriber Subclass, as well as
5   those which were assigned to the Provider Plaintiffs and the ERISA Provider
6   Subclass, and convert those withheld funds for its own direct or indirect financial
7   gain. WellPoint created an appearance of regularity and legitimacy by providing false
8   and incomplete information to Plaintiffs and ERISA Subclass members, in order to
9   increase revenue through its plan and claims administration business.

10      441.    The direct and intended victims of the pattern of racketeering activity
11  described previously herein are Plaintiffs and ERISA Provider and Subscriber
12  Subclasses, who Defendants deprived of the complete guaranteed benefits to which
13  they are entitled for ONS.

14      442.    Defendants' RICO violations injured Plaintiffs and the ERISA
15  Subscriber and Provider Subclasses in their business and property by depriving them
16  of hundreds of millions of dollars in guaranteed benefits on their claims for
17  reimbursement of out-of-network charges, as well as the knowledge necessary to
18  challenge false and manipulative UCR determinations, and their injuries were
19  proximately caused by the violations of 18 U.S.C. § 1962(c) because these injuries
20  were the foreseeable, direct, intended, and natural consequence of WellPoint's RICO
21  violations (and commission of underlying predicate acts), and but for their RICO
22  violations (and commission of underlying predicate acts), ERISA Plaintiffs,
23  Association Plaintiffs and ERISA Subclass members would not have suffered the
24  injuries suffered by them.

25      443.    As a result of their misconduct, Defendants are liable to the ERISA
26  Plaintiffs, the ERISA Provider and Subscriber Subclasses, and the Association
27  Plaintiffs in an amount to be determined at trial. Pursuant to Section 1964(c) of RICO,
28

148

18 U.S.C. § 1964(c), ERISA Plaintiffs and the ERISA Subclass members are entitled to recover threefold their damages, and costs and attorneys' fees from Defendants.

## EIGHTH CLAIM FOR RELIEF

### FOR VIOLATIONS OF RICO
### 18 U.S.C. § 1962(d)

**(Against All Defendants on Behalf of All Plaintiffs and the Subscriber and Provider Classes and the Association Plaintiffs with the Limitation for the AMA)**

444.   Plaintiffs hereby repeat the allegations of the prior paragraphs of the Complaint as if fully set forth herein.   This Claim is brought by all Plaintiffs, the Subscriber and Provider Classes and the Association Plaintiffs on behalf of themselves and their members, except that the AMA does not bring claims against the UnitedHealth Defendants.

445.   WellPoint conspired with Ingenix and UnitedHealth, among others, to conduct or participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as described in this Complaint in violation of 18 U.S.C. § 1962(d).   This conspiracy to violate 18 U.S.C. § 1962(c) constitutes a violation of 18 U.S.C. § 1962(d).

446.   In furtherance of this conspiracy, Defendants and others known and unknown to Plaintiffs committed numerous overt acts as alleged above in the pattern of racketeering described above.

447.   As a direct and proximate result of, and by reason of, the activities of Defendants and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs and the Subscriber and Provider Classes have been injured within the meaning 18 U.S.C. § 1964(c).

448.   Plaintiffs are entitled to treble damages, together with the costs of this lawsuit, expenses, and reasonable attorneys' fees on behalf of themselves and the Subscriber and Provider Classes.

149

## NINTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
**(Against WellPoint on Behalf of the Non-ERISA Plaintiffs and the Non-ERISA Subscriber and Provider Subclasses)**

449. Plaintiffs incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, except that they are not relying upon the conspiracy allegations. Plaintiffs bring this claim on behalf of the Non-ERISA Subscriber and Provider.

450. The Agreement constitutes a contract whereby members of the Non-ERISA Subscriber Class agree to pay dues, deductibles, and co-payments, on one hand, and WellPoint agrees to provide healthcare benefits, including ONS reimbursements based on either the actual charges, the "Negotiated Fee Rate," or the customary rates charged by healthcare professionals in the region where the ONS was obtained, on the other hand. On information and belief, Plaintiffs J.B.W. and the Samsells entered into substantially similar Agreements. And Plaintiffs Henry, Schwendig, Peck, Pariser, Kavali, Higashi, and the NPSC were assigned the benefits of such Agreements by some WellPoint insureds, for whom they provided ONS.

451. Plaintiffs J.B.W. and the Samsells and other members of the Non-ERISA Subscriber Subclass performed their obligations under such Agreements. WellPoint unjustifiably breached its Agreements by failing to reimburse ONS based on the UCR, a fair rate negotiated with the provider, or otherwise in accordance with the terms of its contracts and, instead, using the flawed and depressed rate information obtained from Ingenix or Non-Ingenix Methodologies, both to determine the UCR and the Negotiated Fee Rate.

452. Plaintiffs J.B.W. and the Samsells and members of the Non-ERISA Subscriber Subclass were damaged by WellPoint's breach of its Agreements in that either their out-of-pocket costs for ONS were increased and/or their deductibles were not paid down as quickly as they should have been as a direct result of WellPoint's breach, or they under-reimbursed for ONS. To the extent they did not bill and receive

150

full payment, Plaintiffs Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and members of the Non-ERISA Provider Subclass received less reimbursement than they were entitled to for providing ONS for non-ERISA subscribers from when they obtained assignments.  Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and members of the Non-ERISA Subscriber and Provider Subclasses are therefore entitled to damages in accordance with proof at trial.

**TENTH CLAIM FOR RELIEF**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against WellPoint on Behalf of the Non-ERISA Plaintiffs and the Non-ERISA Subscriber and Provider Subclasses)**

453.   Plaintiffs incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, except that they are not relying upon the conspiracy allegations.  Plaintiffs bring this claim on behalf of the Non-ERISA Subscriber and Provider Subclasses.

454.   Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, and the NPSC are informed and believe and thereon allege that since at least 1998 and continuing thereafter through the present, WellPoint has been calculating UCRs and other forms of ONS reimbursement based on the flawed data obtained from Ingenix and Non-Ingenix Methodologies, resulting in its failure to reimburse ONS in accordance with the terms of its Agreements.

455.   WellPoint utilized the flawed data thereby under-reimbursing its members in order to obtain additional revenues to unlawfully enrich WellPoint to the detriment of Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and the other members of the Non-ERISA Subscriber and Provider Subclasses.

456.   Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and members of the Non-ERISA Subscriber and Provider Subclasses purchased the health service plans and/or provided services to WellPoint

151

1   insureds with the reasonable expectation that they would be reimbursed for ONS

2   based upon the actual charge, a fairly-negotiated rate, or the reasonable charge for the

3   particular healthcare service in the region where that service is obtained.

4      457.   Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser,

5   Kavali, Higashi, the NPSC. and members of the Non-ERISA Subscriber and Provider

6   Subclasses purchased the health services plans and/or provided services with the

7   reasonable expectation that WellPoint would deal with them honestly, fairly,

8   equitably, in good faith, and in full conformity with the fundamental and implied

9   terms of the Agreements.  WellPoint brought about and intended this expectation

10  through the contractual language in the Agreements, through its advertising, websites,

11  SPDs, and through the express representations of its employees, agents, and

12  representatives.

13     458.   In breach of the covenant of good faith and fair dealing, WellPoint has

14  failed to reimburse ONS based on actual UCRs or a fairly-negotiated rate, and has not

15  provided any additional benefits to Plaintiffs J.B.W., the Samsells, Henry, Schwendig,

16  Peck, Pariser, Kavali, Higashi, the NPSC, and the Non-ERISA Subscriber and

17  Provider Subclasses, for the increased charges resulting from their under-

18  reimbursement for ONS.  WellPoint has unreasonably denied Class members the

19  benefit of their bargain and/or the benefits owed pursuant to assignment of benefits

20  executed by WellPoint insureds.

21     459.   WellPoint has materially and fundamentally breached the duty of good

22  faith and fair dealing owed to Plaintiffs J.B.W., the Samsells, Henry, Schwendig,

23  Peck, Pariser, Kavali, Higashi, the NPSC, and the Non-ERISA Subscriber and

24  Provider Subclasses, in at least the following respects:

25         (a)    unreasonably, secretly, and in bad faith conspiring to utilize flawed

26  data to calculate depressed UCRs, Negotiated Fee Rates, and other types of ONS

27  reimbursement in order to under-reimburse plan members for ONS to unlawfully

28  enrich themselves;

152

(b)  unreasonably and in bad faith failing to clearly and definitely provide notice of the fact that WellPoint utilizes flawed data or inappropriate data to calculate False UCRs and Negotiated Fee Rates, which results in higher payments for ONS;

(c)  unreasonably and in bad faith continuing to misrepresent that WellPoint insureds were being reimbursed for ONS based on the UCR or a fairly-negotiated rate when, in reality, WellPoint continues to utilize flawed Ingenix data or Non-Ingenix Methodologies to calculate False UCRs and Negotiated Fee Rates;

(d)  unreasonably, secretly, and in bad faith providing intentionally flawed and manipulated data to Ingenix for use in the Ingenix Database with the knowledge that such data would produce artificially-low False UCRs from Ingenix; and

(e)  unreasonably and in bad faith putting the interests of WellPoint ahead of those of the Subscriber and Provider Non-ERISA Subclasses.

460.  WellPoint's conduct represents a failure or refusal to discharge its contractual responsibilities, prompted by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and the Non-ERISA Subscriber and Provider Subclasses, and thereby deprives the same of the benefits of the Agreements in accordance with their agreed-upon terms.

461.  Plaintiffs J.B.W. and the Non-ERISA Subscriber and Provider Subclasses, performed their obligations under the Agreements by paying WellPoint the dues, deductibles, and co-payments required by the Agreements.

462.  Upon information and belief, Plaintiffs J.B.W., the Samsells, Henry, Schwendig, Peck, Pariser, Kavali, Higashi, the NPSC, and the Non-ERISA Subscriber and Provider Subclasses, were damaged by WellPoint's breach of the covenant of good faith and fair dealing in that they made out-of-pocket, direct payments and/or

153

1   were under-reimbursed for ONS, ONS coverage that the Non-ERISA Subscriber

2   Subclass would not even have purchased had they been adequately informed of its

3   true cost, thereby resulting in increased out-of-pocket costs and/or they were unable to

4   pay down their deductibles as quickly as they should have, and are therefore entitled

5   to damages in accordance with proof at trial.

6                        **ELEVENTH CLAIM FOR RELIEF**

7       **FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
    **(Against WellPoint Defendants on Behalf of Plaintiffs J.B.W., Henry, Higashi,**
8       **Schwendig, Peck, Pariser, the NPSC, the Non-ERISA Subscriber and**
9           **Provider Subclasses and AMA, CMA, APMA, CCA, and CPA**

10          463.    Plaintiffs incorporate herein by reference each of the allegations

11  contained in the preceding paragraphs of this Complaint. Plaintiffs J.B.W., Henry,

12  Schwendig, Peck, Pariser, Higashi, the NPSC, and the AMA, CMA, APMA, CCA,

13  and CPA bring this claim on behalf of the members of the Non-ERISA Subscriber and

14  Provider Subclasses residing in or providing services in California (the "California

15  Non-ERISA Subclasses").

16          464.    Plaintiffs J.B.W., Henry, Higashi, Schwendig, Peck, Pariser,

17  Kavali, and the NPSC have suffered injury in fact and lost money as a result of the

18  unfair competition alleged.  These Plaintiffs each relied on WellPoint to reimburse

19  them the appropriate amount for their services in compliance with WellPoint's legal

20  and contractual obligations, and not to take actions to improperly lower the

21  reimbursement rates.

22

23          465.    The California Unfair Competition Law ("UCL"), Business and

24  Professions Code § 17200, *et seq.*, defines unfair competition to include any unlawful,

25  unfair, or fraudulent (within the meaning of the UCL) business act or practice and

26  unfair, deceptive, untrue, or misleading advertising.

27

28

                                    154

466.   From at least as early as January 1, 1999, Defendants have committed acts of unfair competition proscribed by Business and Professions Code §17200 *et seq.*, including the acts and practices alleged herein.

467.   WellPoint also has engaged in unfair business practices by failing to reimburse for ONS based on the actual price or the UCR as promised in their Agreements.   The unfair business practices include, but are not limited to, when Wellpoint has used Ingenix and other ONS Benefit Reductions to determine the amount of reimbursement for ONS.   Such conduct is unlawful as a breach of contract and a breach of the implied covenant of good faith and fair dealing found in insurance agreements.   Such conduct represents a failure or refusal to discharge their contractual responsibilities, prompted by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the policyholders and thereby deprives the policyholders of the benefits of the agreement according to the agreed-upon terms.   The policyholders have fully performed and are entitled to full performance by WellPoint.   The policyholders have suffered losses including under-reimbursement for ONS by WellPoint due to their unlawful and secret conspiracy; Providers suffered the same losses as well as injuries to their business due to Defendants' actions and unlawful conspiracy as beneficiaries of assignments of benefits from insureds.

468.   WellPoint's business acts and practices constitute unlawful and fraudulent business practices in that WellPoint advertises, promotes and sell their health plans based on false, widely disseminated representations on its website, SPDs, and other standard promotional materials that their insureds will have the right to freely choose between in-network and out-of-network providers, and that ONS will be reimbursed based on the actual billed cost or based on UCRs.   In reliance upon these materials, described in paragraph 364, Plaintiff J.B.W. and the members of the Non-ERISA Subscriber Subclass became subscribers of the WellPoint healthcare plans with the reasonable understanding and belief that they would have a free choice of

155

1  providers, and that they would be reimbursed for ONS based on the actual billed cost
2  or based on UCRs.  Overall out-of-pocket costs of healthcare, including the cost of
3  ONS, and choice of providers are extremely important to Plaintiff J.B.W. and the
4  other members of the Non-ERISA Subscriber Subclass.   As described herein,
5  WellPoint does not use the actual cost or UCRs to calculate ONS, but, rather, use the
6  False UCRs obtained from Ingenix and other ONS Benefit Reductions to calculate
7  reimbursements for ONS.  By using False UCRs and other ONS Benefit Reductions as
8  a basis for reimbursing Plaintiff J.B.W. and the other Non-ERISA Subscriber Subclass
9  members, WellPoint increased their own out-of-pocket costs for ONS and deterred the
10  California Non-ERISA Subscriber Subclass members from freely choosing between
11  in-network and out-of-network providers.

12       469.    A business practice is "unlawful" under the Unfair Competition Law if it
13  is forbidden by law, including state or federal laws or regulations.

14       470.    California Health and Safety Code, title 28, Sect. 1300.71, subd. (a) (3)
15  (B) provides:

16            (3) "Reimbursement of a Claim" means:

17            (B) For contracted providers without a written contract and non-
18            contracted providers, except those providing services described in
19            paragraph (C) below: the payment of the reasonable and customary value
20            for the health care services rendered based upon statistically credible
21            information that is updated at least annually and takes into
22            consideration:(i) the provider's training, qualifications, and length of
23            time in practice; (ii) the nature of the services provided; (iii) the fees
24            usually charged by the provider; (iv) prevailing provider rates charged in
25            the general geographic area in which the services were rendered;
26            (v) other aspects of the economics of the medical provider's practice that
27            are relevant; and (vi) any unusual circumstances in the case.

28

156

471.    As described throughout this Complaint, WellPoint's use of Ingenix and other faulty data to determine UCRs for reimbursements was not based on statistically credible information as required by the California regulation quoted above. Rather, it was based on unreliable data that skewed UCRs and reimbursements to the California Non-ERISA Subscriber and Provider Subclasses to lower amounts than they should have been.   WellPoint's conduct violated the "unlawful" prong of the Unfair Competition Law.

472.    WellPoint's conduct also violated the "unlawful" prong of the Unfair Competition Law by violating its duty of disclosure under Section 332 of the California Insurance Code and its accompanying sections to the California Non-ERISA Subscriber Subclass and, as assignees of insureds under their health insurance plans, the California Non-ERISA Provider Subclass. Section 332 entitled "Required Disclosure" provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." As described throughout this Complaint, WellPoint concealed, misrepresented, and failed to disclose to Plaintiffs and members of the California Non-ERISA Subclasses its use of faulty and unreliable data to determine UCR amounts or that it was under-reimbursing them, which was material information known only to WellPoint and the Conspirators.

473.    Moreover, as the violation of any law may serve as the predicate for a violation of the "unlawful" prong of the Unfair Competition Law, Plaintiffs further allege that WellPoint, in violating RICO, the Sherman Act, the common law of contract, and entering into a trust that impairs competition in violation of California's Cartwright Act, California Business and Professions Code § 16700 *et seq.*, violated the Unfair Competition Law. By committing the acts alleged above, WellPoint has engaged in unlawful business practices and acts of unfair competition within the meaning of California Business and Professions Code § 17200. WellPoint's conduct,

1    which is ongoing, is immoral, unethical, oppressive, unscrupulous and substantially
2    injurious to consumers.  The gravity of harm caused by WellPoint's conduct far
3    outweighs the utility, if any, of such conduct.

4          474.   In addition, California Business & Professions Code § 17500 makes it
5    unlawful for any corporation to knowingly make, by means of any advertising device
6    or otherwise, any untrue or misleading statement with the intent to sell anything of
7    any nature, or to induce the public to purchase anything of any nature.  WellPoint's
8    advertising described herein, violated California Bus. & Prof. Code §§ 17200 and
9    17500 because it is likely to deceive, and in fact has deceived Plaintiffs J.B.W.,
10   Henry, Higashi, Schwendig, Peck, Pariser, the NPSC, and the members of the Non-
11   ERISA Subclasses, including members of the Association Plaintiffs in violation of
12   Calif. Bus. & Prof. Code § 17500.

13         475.   WellPoint has disseminated, and continues to disseminate advertising
14   and other materials to plan members, potential customers, their insureds, and
15   healthcare providers, which it knows or should reasonably know is false and
16   misleading.

17         476.   WellPoint advertises, promotes, and sells its health plans based on
18   widely disseminated and uniform representations on its website, SPDs, and other
19   standard form promotional materials that ONS will be reimbursed based on the actual
20   billed cost or based on UCRs.  WellPoint nevertheless does not use either actual costs
21   or UCRs to calculate ONS, but rather, uses the False UCRs obtained from Ingenix,
22   and other ONS Benefit Reductions to calculate reimbursements for ONS.

23         477.   By committing the acts alleged above, WellPoint has knowingly
24   disseminated untrue and/or misleading statements in an advertising or other device in
25   order to sell or induce members of the public to purchase their health benefit plans and
26   induce providers to administer healthcare services to its insureds, in violation of Calif.
27   Bus. & Prof. Code § 17500.

28

478.    Plaintiffs J.B.W., Henry, Higashi, Schwendig, Peck, Pariser, Higashi, the NPSC, and the California Non-ERISA Subclasses, including members of the Association Plaintiffs who reside in or who provide services in California, have suffered injury in fact to their businesses and persons and lost money or property as a result of WellPoint's false and misleading statements.  Among other things, Plaintiff J.B.W. and the other members of the California Non-ERISA Subscriber Subclass who subscribed to WellPoint's health plans have been forced to pay higher out-of-pocket costs for ONS as a result of WellPoint's conduct alleged herein, ONS that they would not even have purchased had they been adequately informed of its true cost, while providers received lower payments for their services as beneficiaries of their patients' assignments of benefits than they should or otherwise would have.

479.    WellPoint holds, retains, and has derived benefits from money properly belonging to Plaintiffs J.B.W., Henry, Higashi, Schwendig, Peck, Pariser, the NPSC, and the Non-ERISA Subclasses, including members of the Association Plaintiffs, thereby entitling those Plaintiffs and subclasses to restitution.

480.    WellPoint's unfair, unlawful, and misleading business acts and practices described herein present a continuing threat to the California Non-ERISA Subscriber and Provider Subclasses in that WellPoint is currently engaging in such acts and practices, and will persist and continue to do so unless and until this Court issues appropriate injunctive and declaratory relief.

## TWELFTH CLAIM FOR RELIEF

### FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW AND CALIFORNIA HEALTH & SAFETY CODE §1371.4
### (Against WellPoint Defendants on Behalf of Plaintiff Schwendig, and the California ER Provider Subclass, CMA, and AMA)

481.    Plaintiffs incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.  Plaintiff Schwendig, and the

159

1    AMA and CMA bring this claim on their own behalf and on behalf of the members of
2    the above-defined California ER Provider Subclass, who provided emergency medical
3    services to WellPoint Knox-Keene governed plan members in the state of California.

4        482.    Plaintiff Schwendig has suffered injury in fact and lost money as a result
5    of the unfair and unlawful competition alleged.  He relied on WellPoint to reimburse
6    him the appropriate amount for services in compliance with WellPoint's legal
7    obligations for its Knox-Keene plans, and not to take actions to improperly lower the
8    reimbursement rates.

9        483.    Dr. Schwendig rendered emergency services to WellPoint members in
10   Knox-Keene governed plans and was reimbursed less than the reasonable and
11   customary value for those services.

12       484.    The California UCL, Business and Professions Code § 17200 *et seq.*,
13   defines unfair competition to include any unlawful, unfair or fraudulent (within the
14   meaning of the UCL) business act or practice and unfair, deceptive, untrue, or
15   misleading advertising.

16       485.    From at least as early as January 1, 1999, WellPoint has committed acts
17   of unfair competition proscribed by Business and Professions Code §17200 *et seq.*,
18   including the acts and practices alleged herein.

19       486.    A business practice is "unlawful" under the Unfair Competition Law if it
20   is forbidden by law, including state or federal laws or regulations.

21       487.    California Health and Safety Code, title 28, California Health & Safety
22   Code § 1371.4(b) provides:

23       A health care service plan . . . shall reimburse providers for emergency
24       services and care provided to its enrollees, until the care results in
25       stabilization of the enrollee, except as provided in subdivision (c).  As
26       long as federal or state law requires that emergency services and care be
27       provided without first questioning the patient's ability to pay, a health
28       care service plan shall not require a provider to obtain authorization prior

160

1    to the provision of emergency services and care necessary to stabilize the

2    enrollee's emergency medical condition.

3    488.    As noted above, Sect. 1300.71, subd. (a) (3) (B) provides:

4         (3) "Reimbursement of a Claim" means:

5         (B) For contracted providers without a written contract and non-

6         contracted providers, except those providing services described in

7         paragraph (C) below: the payment of the reasonable and customary value

8         for the health care services rendered based upon statistically credible

9         information that is updated at least annually and takes into

10        consideration:(i) the provider's training, qualifications, and length of

11        time in practice; (ii) the nature of the services provided; (iii) the fees

12        usually charged by the provider; (iv) prevailing provider rates charged in

13        the general geographic area in which the services were rendered;

14        (v) other aspects of the economics of the medical provider's practice that

15        are relevant; and (vi) any unusual circumstances in the case.

16    489.    As described throughout this Complaint, WellPoint's use of Ingenix and

17   Non-Ingenix Methodologies, including in-network fee schedules to determine the

18   UCR or "reasonable and customary value" for reimbursements, was not based on

19   statistically-credible information as required by California law. Rather, it was based

20   on unreliable data that skewed UCRs and reimbursements to the California ER

21   Provider Subclass to lower amounts than they should have been. WellPoint's conduct

22   violated section 1371.4 of the California Health and Safety Code and the "unlawful"

23   prong of the UCL.

24    490.    By committing the acts alleged above, WellPoint has engaged in

25   unlawful business practices and acts of unfair competition within the meaning of

26   California Business and Professions Code § 17200. WellPoint's conduct, which is

27   ongoing, is immoral, unethical, oppressive, unscrupulous and substantially injurious to

28

1    consumers. The gravity of harm caused by WellPoint's conduct far outweighs the

2    utility, if any, of such conduct.

3        491. Plaintiff Schwendig and the other members of the California ER

4    Provider Subclass, including members of the Association Plaintiffs who reside in or

5    who provide services in California, have been under-reimbursed and suffered injury in

6    fact to their businesses and persons and lost money or property as a result of

7    WellPoint's false and misleading statements. WellPoint holds, retains, and has

8    derived benefits from money properly belonging to Plaintiff Schwendig, other

9    members of the California ER Provider Subclass, and the AMA, CMA, and their

10   members, thereby entitling those Plaintiffs and that Subclass to restitution.

11       492. WellPoint's unlawful business acts and practices described herein

12   present a continuing threat to the California ER Subclass in that WellPoint is currently

13   engaging in such acts and practices, and will persist and continue to do so unless and

14   until this Court issues appropriate injunctive and declaratory relief.

15   **THIRTEENTH CLAIM FOR RELIEF**

16   **FOR VIOLATION OF THE CARTWRIGHT ACT**
     **(Against All Defendants on Behalf of Plaintiffs Roberts, J.B.W., Henry,**

17   **Higashi, Schwendig, Peck, Pariser, Kavali and the NSPC, the AMA (with the**
     **Limitation Below, CMA, APMA, CCA and CPA and the Provider and**

18   **Subscriber Classes)**
     **(Partially-Dismissed Claim as to ERISA Plaintiffs**[5]

19   **Repleaded for Purpose of Preservation for Appeal)**[5]

20       493. Plaintiffs incorporate herein by reference each of the allegations

21   contained in the preceding paragraphs of this Complaint. Plaintiffs, Roberts, J.B.W.,

22

23   _____

24   [5] The Court dismissed this Count, to the extent asserted by all ERISA Plaintiffs, in its
     August 11, 2011 ruling on Defendants' motion to dismiss the Second Consolidated

25   Amended Complaint. D.E. 243, at 46-48. Because the Court's dismissal was with
     leave to amend, Plaintiffs re-allege this Count in order to preserve any arguments of

26   the ERISA Plaintiffs with respect to the Court's dismissal on appeal, *see N.Y. City*

27   *Employees' Ret. Sys*, 593 F.3d at 1025, recognizing that no responsive pleading from
     Defendants with respect to the ERISA Plaintiffs is required as to this Count.

28

1    Henry, Higashi, Schwendig, Peck, Pariser, Kavali, the NSPC, the AMA (except that
2    the AMA is not bringing claims against the UnitedHealthcare Defendants), the CMA,
3    APMA, CCA, and CPA bring this claim on behalf of members of the Subscriber and
4    Provider Classes residing in or providing services in California.

5          494.   From a date unknown, but beginning at least as early as January 1, 1999,
6    Defendants and the Conspirators engaged in unlawful contracts, combinations, and
7    conspiracies in an unreasonable restraint of interstate trade or commerce in violation
8    of the Cartwright Act (Cal. Bus. & Prof. Code § 16700 *et seq.*). These unlawful
9    contracts, combinations, and conspiracies were entered into and effectuated within the
10   State of California and within each of the states whose antitrust laws Plaintiffs have
11   alleged Defendants have violated.

12         495.   The unlawful contracts, combinations, and conspiracies consisted of
13   continuing agreements, understandings, and concerts of action between and among
14   WellPoint, UnitedHealth, Ingenix and the other Conspirators, the substantial terms of
15   which were to illegally fix UCRs.  Defendants' illegal conspiracy was intended to
16   directly affect the end payors of the medical services covered by ONS insurance plans.
17   The intent, purpose and effect of the conspiracy were to cap ONS reimbursement rates
18   for the purpose of under-reimbursing patients and providers who submitted claims for
19   ONS services.  Defendants and the Conspirators set reimbursement ceilings and
20   caused a decrease in reimbursements and/or payments for ONS medical services that
21   would not have existed but for their anticompetitive conduct.  As a result of the
22   wrongful conduct alleged herein, Plaintiffs Roberts, J.B.W., Henry, Schwendig, Peck
23   Pariser, Kavali, the NPSC, as well as members of the AMA, CMA, APMA, CCA, and
24   CPA who are residents of or who provided services within California and the
25   Subscriber and Provider Classes paid more for ONS services and/or received less for
26   providing ONS services than they would have but for Defendants' and the
27   Conspirators' anticompetitive conduct.

28

163

1   WHEREFORE, Plaintiffs pray for judgment against Defendants, as set forth

2   hereafter.

3                          **PRAYER FOR RELIEF**

4   WHEREFORE, Plaintiffs pray as follows:

5   A.   The Court determine that this action may be maintained as a class action

6   pursuant to Rules 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil

7   Procedure and declare Plaintiffs as representatives of their respective  Classes and

8   Subclasses and, pursuant to Rule 23(g)(1) of the Federal Rules of Civil Procedure,

9   their counsel as counsel for those Classes and Subclasses;

10   B.   The Court declare the conduct alleged herein be unlawful;

11   C.   The Court enjoin Defendants from continuing the unlawful activities

12   alleged herein;

13   D.   The Court order WellPoint to recalculate and issue unpaid benefits to

14   Plaintiffs and members of the Classes that were underpaid as a result of Defendants'

15   unlawful activities alleged herein;

16   E.   The Court declare that WellPoint has breached the terms of its EOCs and

17   SPDs and award unpaid benefits to Plaintiffs and the ERISA Subscriber and Provider

18   Subclasses, as well as awarding injunctive and declaratory relief to prevent

19   WellPoint's continuing ONS ABDs that are undisclosed and unauthorized by EOCs

20   and SPDs;

21   F.   The Court declare that WellPoint has violated its fiduciary duties

22   including the duties of loyalty and care to Plaintiffs and the Classes, and award

23   appropriate relief, including unpaid benefits, restitution, interest, and declaratory and

24   injunctive relief to Plaintiffs and the Classes, and removing WellPoint and any of its

25   agents, divisions, subsidiaries, or other affiliates as fiduciaries;

26   G.   The Court declare that WellPoint has failed to provide a "full and fair

27   review" to Plaintiff Roberts, Cooper, Rivera-Giusti, Schwendig, Henry, Peck, Kavali,

28   the NPSC, and the ERISA Subscriber and Provider Subclasses under 29 U.S.C. §

164

1133, and award injunctive, declaratory, and other equitable relief to ensure compliance with ERISA and its regulations ;

H.    The Court declare that WellPoint has violated its disclosure and related obligations under ERISA and federal common law, including under 29 U.S.C. § 1022, for which Plaintiffs Roberts, Cooper, Rivera-Giusti, Henry, Schwendig, Peck, Kavali, and Pariser and the ERISA Subscriber and Provider Subclasses are entitled to injunctive, declaratory and other equitable relief;

I.    The Court declare that WellPoint breached the terms of its Agreements and award unpaid benefits to Plaintiffs J.B.W., the Samsells, the Non-ERISA Subscriber Subclass, Provider Plaintiffs, and the Non-ERISA Provider Subclass;

J.    The Court award injunctive and declaratory relief to prevent continuation or recurrence of Defendants' undisclosed and unauthorized scheme;

K.    The Court award Plaintiffs and the Classes and Subclasses monetary damages as provided for under law, including any trebling or special damages allowable under law;

L.    The Court award the Association Plaintiffs monetary damages, declaratory and injunctive relief as allowed under law, including trebling or special damage, and award injunctive and declaratory relief as appropriate to those Associations;

M.    The Court award Plaintiffs and the Subclasses Classes either legal or equitable restitution, as appropriate;

N.    The Court award Plaintiffs and the Classes and Subclasses their costs of suit, including reasonable attorneys' fees, experts' fees, and all other expenses as provided by law;

O.    The Court award pre- and post-judgment interest; and

P.    The Court grant such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial of all issues so triable.

DATED: October 17, 2011

**SCOTT+SCOTT LLP**

/s/Christopher M. Burke
Christopher M. Burke, SBN 214799
Joseph P. Guglielmo, *pro hac vice*
Amelia F. Burroughs, SBN 221490
6424 Santa Monica Blvd.
Los Angeles, CA 90038
Tel: (213) 985-1274
Fax: (213) 985-1278
cburke@scott-scott.com
jguglielmo@scott-scott.com
amburroughs@scott-scott.com

Stephen A. Weiss
Christopher A. Seeger
Diogenes P. Kekatos, *pro hac vice*
James A. O'Brien III, *pro hac vice*
**SEEGER WEISS LLP**
77 Water Street
New York , NY 10005
Tel: (212) 584-0700
Fax: (212) 584-0799
sweiss@seegerweiss.com
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
iobrien@seegerweiss.com

*Interim Co-Lead Counsel for*
*Subscriber Class Counsel for*
*Plaintiff Michael Roberts*

Mark N. Todzo, SBN 168389
Lisa Burger, SBN 239676
**LEXINGTON LAW GROUP**
1627 Irving Street
San Francisco, CA 94122
Tel: (415) 759-4111
Fax: (415) 759-4112
mtodzo@lexlawgroup.com
lburger@lexlawgroup.com

*Interim Co-Lead Counsel for*
*Subscriber Class and Attorneys for*
*Plaintiff J.B.W., a minor, by and*
*through Julz W., parent and*
*guardian ad litem*

**WHATLEY DRAKE & KALLAS, LLC**

Edith M. Kallas
Joe R. Whatley, Jr.
W. Tucker Brown
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7070
Fax: (212) 447-7077
ekallas@wdklaw.com
jwhatley@wdklaw.com
tbrown@wdklaw.com

D. Brian Hufford
Robert J. Axelrod
**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**
100 Park Avenue
New York, NY 10017
Tel: (212) 661-1100
Fax: (212) 661-8665
dbhufford@pomlaw.com
rjaxelrod@pomlaw.com

Raymond P. Boucher, SBN 115364
Helen Zukin, SBN 117933
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel: (310) 854-4444
Fax: (310) 854-0812
boucher@kbla.com
zukin@kbla.com
eyerly@kbla.com

*Interim Co-Lead Counsel for Provider*
*Class and Attorneys for American Medical*
*Association, California Medical*
*Association, Medical Association of*
*Georgia, Connecticut State Medical*
*Society, Stephen D. Henry, M.D., James*
*G. Schwendig, M.D. Carmen Kavali, M.D.*

166

1  Brian S. Kabateck, SBN 152054
   Richard L. Kellner, SBN 171416
2  Joshua H. Haffner, SBN 188652
   Artin Gholian, SBN 258280
3  **KABETECK KELLNER LLP**
   644 South Figueroa Street
4  Los Angeles, CA 90017
   Tel : (213) 217-5000
5  Fax: (213) 217-5010
   ag@kbklawyers.com
6  bsk@kbklawyers.com
   jhh@kbklawyers.com
7  rlk@kbklawyers.com

8  Eric D. Freed, SBN 164523
   George K. Lang
9  Jeffrey A. Leon
   **FREED & WEISS LLC**
10 111 West Washington Street, Ste 1331
11 Chicago, IL 60602
   Tel (312) 220-0000
12 Fax: (312) 220-7777

13 eric@freedweiss.com
   george@freedweiss.com
14 David M. Sternfield
   **DAVID M. STERNFIELD LAW OFFICES**
15 33 North Dearbon Street, Suite 300
16 Chicago, IL 60602

17 Richard J. Burke
   **RICHARD J. BURKE LLC**
18 1010 Market Street, Suite 650
   St Louis, MO 63101
19 Tel: (314) 880-7000
   rich@richardjburke.com
20
   *Attorneys for Plaintiff S. Higashi*
21
   Joseph N. Kravec, Jr.
22 Ellen M. Doyle
   **STEMBER FEINSTEIN DOYLE**
23 **PAYNE & CORDES LLC**
   429 Forbes Avenue, 17th floor
24 Pittsburgh, PA 15219
   Tel: 412-281-8400
25 Fax: 412-281-1007
   jkravec@stemberfeinstein.com
26 edoyle@stemberfeinstein.com

27

28

Christopher P Ridout, SBN 143931
Devon Marie Lyon, SBN 218293
**RIDOUT AND LYON LLP**
555 East Ocean Boulevard, Suite 500
Long Beach, CA 90802
Tel: (562) 216-7380
Fax: (562) 216-7385
c.ridout@ridoutlyonlaw.com
d.lyon@ridoutlyonlaw.com

Maury A. Herman
Stephen J. Herman
**HERMAN GEREL LLP**
230 Peachtree Street NW, Suite 2260
Atlanta, GA 30303
Tel: (404) 880-9500
Fax: (404) 880-9605
mherman@hermangerel.com
sherman@hermangerel.com

*Attorneys for Plaintiff North Peninsula Surgical Center, L.P., et al.*
Donald E. Haviland, Jr.
**THE HAVILAND LAW FIRM LLC**
111 South Independence Mall East
Suite 1000
Philadelphia, PA 19106
Tel: 215-609-4661
Fax: 215-392-4400
haviland@havilandlaw.com

*Designated Counsel for Issues Relating to Empire Blue Cross Blue Shield, a Subsidiary of WellPoint and Attorney for Plaintiffs D. Samsell, V. Samsell, and M. Cooper,*

Barbara G. Quackenbos
Barry M. Epstein
Kevin P. Roddy
**WILENTZ, GOLDMAN & SPIZER PA**
90 Woodbridge Center Drive, Suite 900
Box 10
Woodbridge, NJ 07095
Tel: 732-636-8000
Fax: 732-855-6117

*Attorneys for Plaintiffs D. Samsell, V. Samsell,, and M. Cooper*

Andrew S. Friedman
Elaine A. Ryan
**BONNETT FAIRBOURN FREIDMAN AND BALINT**
2901 North Central Avenue. Suite 1000

1   William T. Payne SBN 90988
2   **STEMBER FEINSTEIN DOYLE**
    **PAYNE & CORDES LLC**
3   1007 Mount Royal Boulevard
4   Pittsburgh, PA 15223
    Tel:  412-492-8797
5   Fax:  412-492-8978

6   Janet Lindner Spielberg
    **LAW OFFICES OF JANET L**
7   **SPIELBERG**
    12400 Wilshire Boulevard, Suite 400
8   Los Angeles, CA 90025
    Tel: 310-392-8801
9   Fax: 310-278-5938
    jlspielberg@jlslp.com
10

11   Michael D. Braun
    **BRAUN LAW GROUP PC**
12   10680 W Pico Boulevard, Suite 280
    Los Angeles, CA 90064
13   Tel: 310-836-6000
    Fax: 310-836-6010
14   service@braunlawgroup.com

15   *Attorneys for Plaintiff M. Pariser*

16   Richard B. Brualdi
    Sue Lee
17   **THE BRUALDI LAW FIRM**
    29 Broadway, Suite 2400
18   New York, NY 100006
    Tel: 212-952-0602
19   Fax: 212-952-0608
    rbrualdi@brualdilawfirm.com
20   slee@brualdilawfirm.com

21   *Attorneys for Plaintiff H. Bernard*

Phoenix, AZ 85012-3311
Tel: 602-274-1100
Fax: 602-274-1199
afriedman@bffb.com

Tonna K. Farrar
**BONNETT FAIRBOURN FREIDMAN AND BALINT**
600 West Broadway, Suite 900
San Diego, CA 92101
Tel: 619-756-7095
Fax: 602-274-1199

*Designated Counsel for Issues Relating to Non-Physician and Non-Dental Providers and Attorneys for Plaintiffs American Podiatric Medical Association, California Chiropractic Association, California Psychological Association, and J. Peck*

Robert J. Rohrberger
**FOX ROTHSCHILD LLP**
75 Eisenhower Parkway
Roseland, NJ 07068
Tel: 973-922-7543
Fax: 973-922-9125
rrohrberger@foxrothschild.com

22
23
24
25
26
27
28

168