Christopher R.J. Pace, Cal. Bar No. 202623
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
christopher.pace@weil.com

Attorneys for Defendants UNITEDHEALTH
GROUP INCORPORATED and INGENIX, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLPOINT, INC. OUT-OF-NETWORK "UCR" RATES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Master Consolidated Case File No. 2:09-ml-02074<br><br>DEFENDANTS UNITEDHEALTH GROUP INC. AND INGENIX, INC.<br><br>(1) AMENDED NOTICE OF MOTION AND MOTION TO DISMISS CORRECTED THIRD CONSOLIDATED AMENDED COMPLAINT UNDER FRCP 9(b) AND 12(b)(6)<br><br>(2) AMENDED MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: March 5, 2012<br>Time: 1:30 p.m.<br>Ctrm: 880<br>Judge: Hon. Philip S. Gutierrez |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that, on March 5, 2012, before the Honorable Philip S. Gutierrez, in Courtroom 880 of the above-entitled Court, Defendants UnitedHealth Group Incorporated ("UHG") and Ingenix, Inc. ("Ingenix") will and hereby do move for an order dismissing with prejudice the Corrected Third Consolidated Amended Complaint (the "Complaint" or "TAC") filed by Plaintiffs for the reasons set forth in the attached Memorandum of Points and Authorities.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and is based upon this Motion, the supporting Memorandum of Points and Authorities, the WellPoint Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Corrected Third Consolidated Amended Complaint (the "WellPoint Brief"), all the pleadings and papers on file herein, and such other matters as may be presented to the Court or otherwise at or before the time of hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 16, 2011.

Dated: December 22, 2011                WEIL, GOTSHAL & MANGES LLP

By:   s/ Christopher R.J. Pace
      Christopher R.J. Pace

Attorneys for Defendants
UNITEDHEALTH GROUP
INCORPORATED and INGENIX, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii, iii, iv

MEMORANDUM OF POINTS AND AUTHORITIES .................................. 1

ARGUMENT ............................................................................................... 1

I.   WELLPOINT DEMONSTRATES THAT THE COMPLAINT MUST BE
     DISMISSED .................................................................................................. 1

II.  PLAINTIFFS FAIL TO PLEAD AN INJURY TO BUSINESS OR PROPERTY "BY
     REASON OF" AN ANTITRUST OR RICO VIOLATION ........................................ 2

III. PLAINTIFFS' ANTITRUST CLAIMS AGAINST UHG AND INGENIX FAIL ............ 4

     A.  Plaintiffs Fail to Adequately Plead Price-Fixing .................................. 4

     B.  Plaintiffs' Fail to Adequately Plead a Rule of Reason Violation ........... 5

IV.  PLAINTIFFS' RICO § 1962(C) CLAIMS AGAINST UHG AND INGENIX FAIL .... 7

     A.  Plaintiffs Inadequately Plead Predicate Acts by UHG or Ingenix ......... 7

     B.  Plaintiffs Cannot Allege Reliance on Mail and Wire Fraud .................. 8

     C.  UHG and Ingenix Did Not Proximately Cause Plaintiffs' Injuries ........ 9

     D.  Plaintiffs Fail to Allege Ingenix or UHG Directed the Enterprise ....... 10

V.   THE NEW COMPLAINT UNDERMINES PLAINTIFFS' CONSPIRACY
     THEORIES ................................................................................................. 11

CONCLUSION ........................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ................................................................ 8

*Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) .................................................................. 6

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................................. 9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ......................................................................... 7, 11

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) .................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 7

*Bhan v. NME Hosps., Inc.*,
  772 F.2d 1467 (9th Cir. 1985) .................................................................. 6

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) .............................................................................. 8, 9

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) .................................................................................. 6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .................................................................................. 2

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) ..................................................................... 2

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
  520 F. Supp. 2d 1199 (C.D. Cal. 2007) .................................................... 6

*Env't Furniture, Inc. v. Bina*,
 2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ................................................. 12

*Fair Isaac Corp. v. Experian Info. Solutions, Inc.*
 650 F.3d 1139 (8th Cir. 2011) ......................................................................... 5

*Franco v. Conn. Gen. Life Ins. Co.*,
 2011 WL 4448908 (D.N.J. Sept. 23, 2011). ................................... 3, 4, 5, 6

*Freeman v. San Diego Ass'n of Realtors*,
 77 Cal. App. 4th 171 (1999) ............................................................................ 5

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
 352 F.3d 367 (9th Cir. 2003) ........................................................................... 6

*Hemi Grp., LLC v. City of New York*,
 130 S. Ct. 983 (2010) .................................................................................... 10

*Hunt v. Wash. State Apple Adver. Comm'n*,
 432 U.S. 333 (1977) ......................................................................................... 3

*In re Actimmune Mktg. Litig.*,
 614 F. Supp. 2d 1037 (N.D. Cal. 2009) ....................................................... 10

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
 2007 WL 486367 (N.D. Cal. Feb. 12, 2007) ............................................... 10

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
 2009 WL 1703285 (C.D. Cal. July 17, 2009) ............................................... 8

*In re GlenFed, Inc. Sec. Litig.*,
 42 F.3d 1541 (9th Cir. 1994) ........................................................................... 8

*Janda v. T-Mobile USA, Inc.*,
 378 F. App'x 705 (9th Cir. 2010) .................................................................... 8

*Marder v. Lopez*,
 450 F.3d 445 (9th Cir. 2006) ........................................................................... 8

*Marlow v. Allianz Life Ins. Co. of N. Am.*,
 2009 WL 1328636 (D. Colo. May 12, 2009) ............................................. 11

*Mattel, Inc. v. MGA Entm't, Inc.*,
　782 F. Supp. 2d 911 (C.D. Cal. 2011) .......................................................... 2, 9

*Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
　2010 WL 1979569 (N.D. Ill. May 17, 2010) .................................................. 4

*Reves v. Ernst & Young*,
　507 U.S. 170 (1993) ...................................................................................... 10

*Sybersound Records v. UAV Corp.*,
　517 F.3d 1137 (9th Cir. 2008) ...................................................................... 10

*Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures*,
　2010 WL 546376 (C.D. Cal. Feb. 10, 2010) ................................................ 12

*Walter v. Drayson*,
　538 F.3d 1244 (9th Cir. 2008) ...................................................................... 11

*Wodka v. Causeway Capital Mgmt.*,
　433 F. App'x 563 (9th Cir. 2011) .................................................................... 9

## STATUTES

15 U.S.C. § 15(a) .................................................................................................... 2

18 U.S.C. § 1962(c) ................................................................................................ 7

18 U.S.C. § 1964(c) ................................................................................................ 2

Cal. Bus. & Prof. Code § 16750(a) ......................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

The central theme of the Complaint is that affiliates of WellPoint, Inc. ("WellPoint") under-reimbursed out-of-network ("OON") services, whether by using the Ingenix Databases or "Non-Ingenix Methodologies" such as "internal fee schedules," "in-network provider fee schedules," "Negotiated Fee Schedules," or a "'percentage of Medicare.'" TAC ¶¶ 16, 177. Yet each Plaintiff also contends that he or she was victimized by alleged conspiracies in violation of the antitrust laws and RICO involving *solely* the use of the Ingenix Databases. While Plaintiffs ignore this inconsistency, the Court cannot.

This is an ERISA case at its core. But Plaintiffs cannot convert their ERISA benefits claims into a plausible antitrust or RICO conspiracy against all subscribers and all providers involving Ingenix and various active competitors of WellPoint. The Complaint's allegations not only fail to show these other entities participated in WellPoint's OON reimbursement decisions, but in fact reveal that WellPoint made such determinations, using a variety of different methods, *independently*.

The Provider Plaintiffs have already dismissed all of their claims against UHG and Ingenix, but the Subscriber Plaintiffs and Association Plaintiffs are still clinging to their antitrust and RICO claims against UHG and Ingenix. Especially in light of recent case law and the reasoning of this Court in its Order granting in part Defendants' most recent motions to dismiss (the "Order") (D.E. 243), these remaining claims against UHG or Ingenix should be dismissed.

## ARGUMENT

**I.  WELLPOINT DEMONSTRATES THAT THE COMPLAINT MUST BE DISMISSED.**

The arguments asserted in the WellPoint Brief are incorporated herein to the extent they relate to claims brought against UHG and Ingenix. UHG and Ingenix set forth below additional arguments applicable to Plaintiffs' claims against UHG and Ingenix that are not asserted in the WellPoint Brief.

## II. PLAINTIFFS FAIL TO PLEAD AN INJURY TO BUSINESS OR PROPERTY "BY REASON OF" AN ANTITRUST OR RICO VIOLATION.

Each of the remaining claims against UHG and Ingenix requires a plaintiff to show he or she was "injured in" his or her "business or property by reason of" either an antitrust or RICO violation. 15 U.S.C. §15(a) (". . . any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor. . . ."); 18 U.S.C. §1964(c) ("Any person injured in his business or property by reason of a violation of [18 U.S.C. §]1962 may sue therefor. . . ."); Cal. Bus. & Prof. Code §16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor. . . ."). No Plaintiff suing UHG and Ingenix can satisfy this element of Sherman Act, Cartwright Act and RICO claims.

<u>Samsells and J.B.W.</u>: Plaintiffs' antitrust and RICO claims are premised on WellPoint using an Ingenix Database to determine the maximum amount it would reimburse for an OON service. TAC ¶¶ 89, 111, 126, 389. The Samsells, however, concede that their OON services were reimbursed using "Anthem Virginia's in-network participating physician schedules . . . created based upon . . . Medicare rates," not the Ingenix Databases. *Id.* ¶ 345. Any injury the Samsells allegedly suffered was therefore *not* caused "by reason of" a purported conspiracy to affect the charges data percentiles in the Ingenix Databases, and accordingly they have no basis to seek relief under the antitrust laws or RICO on account of the purported conspiracy. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (antitrust injury must be "the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful"); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1034 (C.D. Cal. 2011) (dismissing RICO claim where plaintiff could not establish its injury "shared a direct relationship with any of counter-defendants' acts of racketeering"); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998) ("Antitrust injury must be caused by the antitrust violation – not a mere causal link, but a direct effect.").

J.B.W. is in a like position. He concedes that WellPoint used "internal fee schedules," not the Ingenix Databases, to reimburse his OON claims. TAC ¶ 337. While J.B.W. nonsensically describes these schedules as somehow "derived with reference to Ingenix fee schedules" (*id.* ¶ 337), he describes them elsewhere in the Complaint as "other than Ingenix" (*id.* ¶ 16), "wholly cryptic and undisclosed" and supported by "methodologies [that] . . . have never been known" (*id.* ¶ 176). J.B.W.'s conclusory, vague and inconsistent allegations are clearly insufficient to allege that he was reimbursed for OON services based upon the Ingenix Databases and thus clearly insufficient to allege that he was affected "by reason of" the purported antitrust and/or RICO conspiracies alleged in the Complaint.

<u>Association Plaintiffs</u>: The Association Plaintiffs cannot have representative standing to pursue antitrust or RICO claims on behalf of their provider-members for multiple reasons.[1] As shown in the WellPoint Brief, they have not alleged a factual basis to demonstrate that their provider-members have standing in their own right to sue UHG or Ingenix in this action for antitrust or RICO violations. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Moreover, even if some of those provider-members do have standing, their individual participation is necessary in this action to determine, for example, which ones (if any) have assignments from WellPoint health plan members expressly encompassing antitrust

---

[1] All Provider Plaintiffs have dismissed their claims against UHG and Ingenix. D.E. 239, 240, 277. The Association Plaintiffs should fare no better on their direct antitrust and RICO claims. Their expenditure of money to "counsel" members, "monitor" health insurers and "lobby" for reform (TAC ¶ 163) might suffice to establish Article III standing, but they are not expenditures caused "by reason of" the purported conspiracies alleged in the Complaint. *See Franco*, 2011 WL 4448908, at *12; *see also Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 WL 1979569, at *20 (N.D. Ill. May 17, 2010). *But see* Order at 12 n.6.

and/or RICO claims and which ones collected their full billed charges from some combination of WellPoint and its health plan members (*i.e.*, which providers collected on account balances from their patients). An association cannot have representative standing when adjudication of its claims requires the individual participation of its members. *See id.*; *see also Franco v. Conn. Gen. Life Ins. Co.*, 2011 WL 4448908, at *11 (D.N.J. Sept. 23, 2011) ("[R]esolving the claims at issue requires careful examination, on a provider-by-provider basis, of the assignments signed by patients and whether they contain the language required for a valid assignment of . . . RICO or antitrust claims. . . .").

All Plaintiffs: For the additional reasons stated below, no Plaintiff has adequately pled an injury caused "by reason of" the purported antitrust and RICO violations pled in the Complaint. *See* Sections III.A, IV.B & IV.C, *infra*.

## III. PLAINTIFFS' ANTITRUST CLAIMS AGAINST UHG AND INGENIX FAIL.
### A. Plaintiffs Fail to Adequately Plead Price-Fixing.

As demonstrated in the WellPoint Brief, Plaintiffs have not adequately alleged a price-fixing conspiracy (whether under the Sherman Act or the Cartwright Act). Plaintiffs do not, and cannot, allege that Defendants offer OON services reimbursement as a product, the price of which could be fixed; rather, Defendants provide health insurance coverage – a complex product involving many facets, including coverage for in-network services, hospital care, medical devices and pharmaceuticals – and there are no allegations in the Complaint that Defendants work together to fix the price of such coverage. *See Franco*, 2011 WL 4448908, at *30. Plaintiffs' failure even to allege that Defendants reimbursed substantially the same amount for any particular provider's services is telling, since it is antithetical to their "price fixing" theory that different health plans reimburse different amounts for the same service from a provider (based on, for example, the reimbursement methodology used, co-insurance and deductible levels, and whether the provider is in-network or OON for that health plan). *Cf. id.* at *29 & n.17.

An even more basic flaw exists in Plaintiffs' price-fixing theory. As this Court held, in light of Plaintiffs' failure to plead specific facts to support an agreement among the supposed conspirators to use a specified percentile from an Ingenix Database to determine OON reimbursements, Plaintiffs at best alleged an agreement to fix a *maximum* reimbursement amount – *i.e.*, a supposed conspirator could not reimburse above the top of the range reflected in the Ingenix Database percentiles. Order at 17. But no Subscriber Plaintiff has alleged that he or she was billed an amount for OON services above this range (nor has any Provider Plaintiff alleged that he or she billed an amount for OON services above this range). Hence, no Plaintiff has alleged that he or she was adversely impacted "by reason of" any purported "'fix' [of] a *maximum* ONS reimbursement" (*id.* (emphasis in original)); instead, each has alleged, at most, an adverse impact from WellPoint's independent decision to reimburse for OON services at some level *below the maximum* from an Ingenix Database. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338-40 (1990) (private plaintiff alleging a price-fixing conspiracy still has to prove it suffered an antitrust injury caused directly by the price-fixing); *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 199 n.30 (1999) (recognizing that *Atlantic Richfield* standard applies to Cartwright Act claim).[2]

### B. Plaintiffs Fail to Adequately Plead a Rule of Reason Violation.

Plaintiffs' antitrust claim fails under the "rule of reason" not only for the reasons stated in the WellPoint Brief, but for an additional reason as well. In general, "antitrust injury requires that the 'injured party be [a] participant in the same market as the alleged malefactors,' meaning a plaintiff must have suffered injury in the same market where competition is being restrained." *Cyntegra, Inc. v.*

---

[2] Plaintiffs' contention that they were the targets of the alleged price-fixing does not excuse them from showing antitrust injury. *See Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139, 1145 (8th Cir. 2011).

*Idexx Labs*, 520 F. Supp. 2d 1199, 1206 (C.D. Cal. 2007) (Gutierrez, J.) (quoting *Bhan v. NME Hosps.*, 772 F.2d 1467, 1470 (9th Cir. 1985), and citing *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003)).[3] But Plaintiffs clearly do not participate in the market Plaintiffs contend was restrained – "the market for data used to calculate UCRs for reimbursement of [OON] claims." TAC ¶ 86.

Plaintiffs also cannot fit within the "narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 n.5 (9th Cir. 1999) (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982)). First, they do not identify injuries to market participants that are "intertwined" with theirs; according to Plaintiffs, the market participants (other health insurers) actually benefit from the Ingenix Databases because they help those insurers reduce costs. Second, as revealed by the Complaint's allegations that WellPoint purportedly under-reimburses OON services even when it is not using the Databases, Plaintiffs' claimed injuries are not "inextricably intertwined" with competition in the "Data Market" at all, but instead are tethered to WellPoint's supposed decisions – by whatever means it uses – to under-reimburse them. *Cf. Franco*, 2011 WL 4448908, at *35 ("Plaintiffs' real dispute . . . lies with [insurers'] use of flawed data, not with the absence of competition in the Data Market.").

## IV. PLAINTIFFS' RICO § 1962(C) CLAIMS AGAINST UHG AND INGENIX FAIL.

### A. Plaintiffs Inadequately Plead Predicate Acts by UHG or Ingenix.

As this Court held, a RICO plaintiff must allege that *each* defendant committed at least two predicate acts to establish a violation of 18 U.S.C. § 1962(c) against multiple defendants. *See* Order at 27. Plaintiffs' RICO claim based on

---

[3] These cases address the Court's concern in its Order that Defendants previously had "fail[ed] to offer any authority on point to conclude that the relevant market must be the *plaintiff's* market." Order at 20 (emphasis in original).

supposed embezzlement by WellPoint does not even mention Ingenix or UHG, failing to cure the very deficiency this Court already found. *See id*. ("There is no mention that UHG Defendants' had access to the [WellPoint] health plan funds, let alone that they converted those funds to their own use."). Plaintiffs also fail to allege sufficiently any predicate acts of mail and wire fraud by UHG. The closest Plaintiffs come is lobbing conclusory statements that UHG was part of the "continuing unit" that perpetrated a fraudulent scheme and "[submitted] false and incomplete data to Ingenix." TAC ¶¶ 296, 308. These statements are mere "labels and conclusions" the Supreme Court has deemed too general to satisfy pleading requirements, and precisely the type of allegations this Court already rejected. *See* Order at 26; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs' RICO allegations with respect to Ingenix fare no better. The Complaint identifies eleven alleged predicate acts of mail and wire fraud, which relate to communications between WellPoint and Ingenix about WellPoint's submission of data for use in the Ingenix Databases. *See* TAC ¶ 312. But Plaintiffs fail to demonstrate, with the specificity required by Rule 9(b), how these benign communications – such as emails from Ingenix confirming receipt of WellPoint's data, requesting that WellPoint re-send data because of problems accessing it from a CD ROM, and reminding WellPoint to contribute data (*id.* ¶ 312)[4] – were false (or even directly linked to other statements that were false). *See* Order at 28; *In re*

---

[4] One of the eleven documents is attached to this Motion and the other ten were accepted under seal by the Court (D.E. 316). Because the documents are identified in the Complaint and central to Plaintiffs' claims, the Court may consider them without converting this Motion into a summary judgment motion. *See Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, at *1 (9th Cir. 2010) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

*GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 2009 WL 1703285, at *6 (C.D. Cal. 2009) (J. Gutierrez); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (dismissing RICO claim where "Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud").

### B. <u>Plaintiffs Cannot Allege Reliance on Mail and Wire Fraud.</u>

"A RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud" must show "that *someone* relied on the defendant's misrepresentations." Order at 31 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). The Subscriber and Association Plaintiffs make no effort to allege such reliance, and the Provider Plaintiffs (none of whom is suing UHG and Ingenix anymore) offer only the most conclusory, and hence meaningless, allegation of reliance. TAC ¶ 319.

Plaintiffs' failure is unsurprising. Plaintiffs reference supposedly false statements between WellPoint and Ingenix, but they do not allege that either Ingenix or WellPoint relied on the other's false statements; to the contrary, Plaintiffs allege that WellPoint and Ingenix both knew the truth about the Ingenix Databases and the contributor data used to create the Databases. *See id.* ¶¶ 73, 116, 130; *see Bridge*, 553 U.S. at 658-59 (party's knowledge of falsity of co-defendants' attestations negates requisite reliance element). Plaintiffs also cannot establish that they relied on any such exchange of allegedly false statements between WellPoint and Ingenix (or on statements by Ingenix to its other licensees that its Databases were the "industry standard" (TAC ¶ 309)) because they expressly admit that they *did not even know* that WellPoint was using an Ingenix Database. *See, e.g.*, *id.* ¶ 133 (supposed conspiracies "predicated, in part, on keeping the Ingenix Database . . . a complete secret from subscribers and providers"); ¶ 378 ("Defendants and the Conspirators also prevented Plaintiffs . . . from knowing or discovering the actual methodologies used by Defendants to determine the ONS Benefit Reductions").

Plaintiffs have failed to show that *anyone* relied on the supposed acts of mail or wire fraud by WellPoint, Ingenix or UHG pled in the Complaint. Plaintiffs' RICO claim against UHG and Ingenix should thus be dismissed.

### C. UHG and Ingenix Did Not Proximately Cause Plaintiffs' Injuries.

Plaintiffs may not recover "on the sole basis that [their] injuries were the foreseeable, or even intended, consequence of a violation of substantive RICO." *Mattel*, 782 F. Supp. 2d at 1023-24. Instead, the "central question . . . is whether the alleged violation [the predicate acts] led *directly* to plaintiffs' injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).

Plaintiffs cannot demonstrate that UHG and Ingenix's alleged acts of mail and wire fraud directly led to WellPoint supposedly under-reimbursing them for OON services. According to the Complaint, not only did WellPoint independently select the Ingenix Database percentile it would apply when it used a Database to determine OON reimbursement limits (TAC ¶ 70), but it also allegedly under-reimbursed Plaintiffs for OON services even when it did not use a Database at all, such as when it used Medicare rates, in-network fee schedules or other internal sources (*id.* ¶¶ 16, 174, 361, 459), and in all cases WellPoint allegedly "prevented Plaintiffs . . . from knowing . . . the actual methodologies used . . . to determine the ONS Benefit Reductions" (*id.* ¶ 378). In short, according to Plaintiffs, the direct cause of their alleged harm was not the existence of the purportedly flawed Ingenix Databases, but WellPoint's independent decisions to supposedly under-reimburse Plaintiffs by whatever reimbursement methodology it employed. *See Bridge*, 553 U.S. at 658-59; *Wodka v. Causeway Capital Mgmt.*, 433 F. App'x 563, 564 (9th Cir. 2011); *Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir. 2008); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009); *see also Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 990 (2010) (plaintiff "cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by alleged conduct").

### D. **Plaintiffs Fail to Allege Ingenix or UHG Directed the Enterprise.**

A RICO plaintiff must demonstrate that a defendant "conducted or participated in the conduct of the '*enterprise's affairs*,' not just [its] *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). This standard cannot be met by alleging "the existence of a business relationship between WellPoint, Ingenix, and the Insurance Defendants." Order at 26.

Plaintiffs do not allege in the Complaint that Ingenix's transactions with alleged co-conspirators differed from its transactions with the hundreds of other entities (not alleged to be conspirators) that contributed data to, or licensed products from, Ingenix. Ingenix's receipt of data and licensing of the Ingenix Databases reflects only Ingenix's conduct of its own business affairs. *See In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2007 WL 486367, at *3-4 (N.D. Cal. Feb. 12, 2007) ("[P]laintiffs cannot satisfy the requirement that they plead an enterprise merely by pleading . . . that the business of the enterprise is co-extensive with the ordinary business of the defendant.").

Nor does UHG's contribution of data to Ingenix indicate that UHG directed the enterprise. *See* TAC ¶¶ 70, 300. As this Court already held, the "submission of [an insurer's] own data does not plausibly show [its control of] other members in the associated-in-fact enterprise." Order at 26. "All it really establishes is that [the insurer] was acting on its own when submitting data to the Ingenix database." *Id.* In addition, Plaintiffs' allegations that UHG controlled Ingenix through its "[participation] in the continued development, operation, and direction of the database after its sale by HIAA to Ingenix" (TAC ¶ 303), are almost identical to Plaintiffs' conclusory allegations in their prior complaint that this Court deemed "too general to satisfy *Twombly*'s pleading instructions." Order at 26. Nowhere have Plaintiffs described in any way how UHG participated in – much less directed – the supposed "WellPoint-Ingenix Enterprise" pled in the Complaint. TAC ¶ 291.

Plaintiffs also do not (and cannot) allege that Ingenix or UHG directed or controlled how WellPoint determined its OON reimbursements. In fact, the Complaint alleges that WellPoint employed a variety of "Non-Ingenix Methodologies" to determine OON reimbursement – including a percentage of Medicare rates and its own in-network fee schedules (*id.* ¶¶ 16, 174, 361, 459) – which underscores UHG and Ingenix's lack of control in directing the affairs of the WellPoint-Ingenix Enterprise. This is fatal to Plaintiffs' substantive RICO claims. *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (more is required than "simply being involved"); *Marlow v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1328638, at *7 (D. Colo. May 12, 2009) ("*[D]irecting some part of* the enterprise's affairs is not the same as *having some part in directing* the enterprise's affairs.").

## V. THE NEW COMPLAINT UNDERMINES PLAINTIFFS' CONSPIRACY THEORIES.

The heart of Plaintiffs' antitrust conspiracy theory is that various health insurers, including WellPoint, agreed (1) to use an Ingenix Database to determine OON reimbursement and (2) not to provide their provider charges data to anyone else (to prevent others from creating competing products). The Complaint's new allegations regarding how WellPoint regularly determines OON reimbursement levels based on the "Non-Ingenix Methodologies" of in-network fee schedules, internal data or Medicare rates demonstrates that WellPoint never agreed with others to use the Ingenix Databases to determine OON reimbursement levels. *See, e.g.*, TAC ¶¶ 16, 174, 361, 459. Furthermore, while the Complaint vaguely alludes to an "apparent agreement by Conspirator Insurers not to contribute their data outside of Ingenix," (*id.* ¶ 90),[5] Plaintiffs fail to plead any "factual enhancement" (*Iqbal*, 129 S. Ct. at 1949) as to the source of any such agreement or WellPoint's

---

[5] Plaintiffs allege that there exist "contractual agreements with insurers that limited their ability to supply their claims data to others" (TAC ¶ 85), but fail to identify what those contracts are or whether WellPoint is a party to such contracts.

participation in the agreement. In short, even if Plaintiffs have pled an agreement to violate the antitrust laws that involves the Ingenix Databases, they have not sufficiently alleged that WellPoint was a party to that agreement, which renders the agreement irrelevant to this action.

Plaintiffs' RICO fraud conspiracy allegations fare even worse. Because the purported conspiracy involves fraud, it must be pled with particularity. *See, e.g.*, *Env't Furniture, Inc. v. Bina*, 2010 WL 5060381, at *5 (C.D. Cal. Dec. 6, 2010) (Gutierrez, J.); *Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures*, 2010 WL 546376, at *3 (C.D. Cal. Feb. 10, 2010) (Gutierrez, J.). Such detail is wholly lacking in the Complaint: Plaintiffs allege in only the most conclusory manner that UHG and WellPoint contributed flawed provider charges data to Ingenix (TAC ¶ 308), offer no support for the conclusion that the Databases were adversely altered or diminished after Ingenix acquired them (and the supposed conspiracy was formed), admit WellPoint did not rely on the Databases exclusively (*id.* ¶¶ 16, 174, 361, 459), and posit a conspiracy to operate a joint venture – the WellPoint-Ingenix Enterprise – that plainly never existed. *See* Section IV.D, *supra*. Plaintiffs' RICO conspiracy allegations do not satisfy Rule 8, let alone Rule 9(b).

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the WellPoint Brief, Plaintiffs' claims against UHG and Ingenix should be dismissed.

Dated: December 22, 2011       WEIL, GOTSHAL & MANGES LLP

By:   s/ Christopher R.J. Pace
Christopher R.J. Pace, Cal. Bar No. 202623

*Attorneys for Defendants UnitedHealth Group Incorporated and Ingenix, Inc.*